IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CALEB BUTLER and JEREMY PENNINGTON | § § | |
| Plaintiffs, | § § | |
| VS. | § | Case Number 1:22-CV-00367 |
| | § | |
| BNSF RAILWAY COMPANY | § | |
| Defendant. | § § | |

## SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE TRUNCALE:

Come now Plaintiffs, Caleb Butler and Jeremy Pennington, complaining of Defendant BNSF Railway Company and, in accordance with the Court's December 1, 2022, Scheduling Order granting leave, file this Second Amended Complaint and would show this Honorable Court the following:

### I. PARTIES

1. Plaintiffs are Caleb Butler and Jeremy Pennington, who were at all material times employed by BNSF Railway Company. Caleb Butler resides at 4051 Forrest Hills Lane, Silsbee, Texas 77656. Jeremy Pennington resides at 13350 Alaskan Drive, Beaumont, Texas 77713.

2. Defendant, BNSF Railway Company, is a corporation doing business in the State of Texas and is subject to personal jurisdiction in the Eastern District of Texas, Beaumont Division in that it has regular and systematic contacts within this District. Defendant has answered and made an appearance.

### II. JURISDICTION AND VENUE

3. Plaintiffs' rights and remedies against Defendant arise under the Federal Railroad Safety Act (FRSA), 49 U.S.C. §20109, and Federal Employers' Liability Act (FELA), 45 U.S.C. §51 et seq. and the Court has jurisdiction to hear this matter pursuant thereto.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 on the basis that the suit arises out of a federal question.

5. Venue is proper in this action pursuant to the terms of 28 U.S.C. §1391 in that all or a substantial portion of the events made the basis of this action occurred in the Eastern District of Texas, Beaumont Division and Defendant resides in and has regular and systematic contacts in the Eastern District of Texas, Beaumont Division.

### III. PROCEDURAL BACKGROUND

6. The subject of this action was a complaint filed with the Secretary of Labor, pursuant to 49 U.S.C. §20109(c)(2) on November 3, 2021 by Caleb Butler and November 12, 2021 by Jeremy Pennington.

7. On February 3, 2022, the Secretary of Labor issued the Secretary's Findings dismissing Butler's case contending "based on the information gathered thus far, OSHA is unable to conclude if there is reasonable cause to believe a violation of the statute occurred."

8. On February 4, 2022, the Secretary of Labor issued the Secretary's Findings dismissing Pennington's case contending "based on the information gathered thus far, OSHA is unable to conclude if there is reasonable cause to believe a violation of the statute occurred."

9. On February 21, 2022, Butler and Pennington timely appealed the Secretary of Labor's findings in OALJ Case Nos. 2022-FRS-00024 & 00025.

10. This action is now brought before this Court as an original action in accordance with 49 U.S.C. §20109(d)(3), the criteria of the provision having been satisfied in that:

a. More than 210 days have passed since the filing of Plaintiffs' complaints with the Secretary of Labor.

b. The fact that more than 210 days have passed since the filing of their complaints is not the result of bad faith of Plaintiffs.

c.  The Secretary of Labor has not issued a final decision.

## IV. BACKGROUND

11. BNSF had **actual** knowledge that the locomotive brakes in the locomotive consist that it instructed its locomotive engineer, Caleb Butler, and conductor, Jeremy Pennington, to use on August 19, 2021, were not functioning properly. Indeed, BNSF was advised on August 12, 2021, which was one week **before** Butler was injured, that the brake shoes on Locomotive 3185 needed to be replaced. Below is an excerpt of BNSF's own documents demonstrating BNSF knew of the hazardous safety condition:



Rather than fix the safety defect, BNSF continued to use the locomotive.

12. On August 18, 2021, BNSF assigned Caleb Buter and BNSF conductors Jeremy Pennington and Jonatan Cardoza to use Locomotive 3185 and Locomotive 143 (collectively referred to as "Locomotive Consist") in Silsbee Yard in Silsbee, Texas. BNSF's train crew (Butler, Pennington and Cardoza) was unaware that another train crew had reported the brakes were defective six days beforehand. However, while using the Locomotive Consist to perform their work, Butler, Pennington and Cardoza discovered that the locomotive brakes were not functioning properly. At the end of the shift, Butler reported to BNSF's Trainmaster Jeff Madden that the brakes were not working correctly and the door handle on one of the locomotives was broken. Trainmaster Madden told Butler that BNSF would take care of it.

13.  The next morning when Butler, Pennington, and Cardoza reported to work, which was August 19, 2021, BNSF Trainmaster Chad Nesteby assigned the train crew to use the same Locomotive Consist to perform switching operations. Conductor Pennington told Trainmaster Nesteby that the brakes on the Locomotive Consist were not functioning properly the day before. Instead of ensuring that the safety defects were fixed, Trainmaster Nesteby instructed Conductor Pennington to use the Locomotive Consist regardless and to modify the way the train crew performed their work to account for the malfunctioning brakes. BNSF's train crew also discovered that BNSF had not fixed the defective locomotive door handle. Butler, Pennington and Cardoza did as instructed and used the Locomotive Consist.

14.  At approximately 10:48 on August 19, 2021, the train crew experienced a hard coupling[1] trying to accommodate the defective locomotive brakes on the Locomotive Consist. As a result, the locomotive seat on BNSF 143 unexpectedly broke, causing an injury to Butler's back. Butler notified BNSF in writing the same day of the defective locomotive seat and his resulting injury. Below is Butler's written statement:

> **BNSF RAILWAY**
>
> **Employee Statement**
>
> Name: Caleb Butler   ID Number: 0044990
> Date: 8/19/21   Time: 15:00   Job Working: S 0132 19
> Statement Given To: Chad Rob Nesteby
>
> Got on BNSF 143 this morning around 0930 to start our work. Seat was leaning back so I pulled the lever to lean seat up and get comfortable. We made serveral moves and sometime before lunch we made a joint that was harder than normal and the seat layed back. I caught myself but have some pain/soreness in my lower back.
>
> Employee Signature: Caleb Butler   Officer Signature: _____

---

[1] A coupling or "joint" is where a locomotive intentionally collides with a railcar to connect to it.

4

15. Following the hard coupling and the locomotive seat breaking, Conductor Cardoza and Conductor Pennington inspected the locomotive seat and verified that it had broken. Butler sought medical treatment for his back injury and has not returned to work as a locomotive engineer due to his injuries.

16. On August 23, 2021, Trainmaster Jeff Madden stopped Conductor Pennington as Conductor Pennington was walking out of the yard office to go to work and delivered a chilling message. Trainmaster Madden told Conductor Pennington that there was nothing wrong with the locomotive seat or the locomotive brakes, that Butler was lying about it, and that some people (meaning the train crew) were going to get fired if Butler pursued his back injury claim. The purpose of Trainmaster Madden's message to Conductor Pennington was to dissuade and discourage Butler and Pennington from engaging in the protected activities described herein.

17. Thereafter, for the express purpose of leaving Silsbee Yard, Conductor Pennington bid on a job in Beaumont, Texas. Not to be deterred and so that all BNSF employees got the message loud and clear, Trainmaster Madden conducted a "safety briefing" in Beaumont, discussed Butler's injury, and warned BNSF employees that employees (which could have only been Butler, Pennington and Cardoza) were going to be fired over the situation. As intended, Trainmaster Madden's message was delivered back to Butler. Butler, however, did not retract his reports that the Locomotive Consist was defective and continued to pursue a personal injury claim against BNSF.

18. BNSF did not discipline or threaten to discipline the employees who did not fix the defective Locomotive Consist or the BNSF manager who instructed Butler, Pennington and Cardoza to use a defective Locomotive Consist. Further, BNSF's own documents, which BNSF had actual knowledge of, completely exonerated Butler, Pennington and Cardoza. Nevertheless, on September 15, 2021, to carry out the threats and intimidation campaign, BNSF sent a Notice of Investigation letter to Butler, Pennington and Cardoza claiming that the train crew, not the defective brakes or broken seat, was the cause of the hard coupling that

injured Butler. BNSF charged the train crew with "Critical Work Practices" violations such that the train crew could be terminated:

> An investigation has been scheduled at 1000 hours, Thursday, September 16, 2021, at the BNSF Railway, 505 W Ave F, Silsbee, TX, 77656, for the purpose of ascertaining the facts and determining your responsibility, if any, in connection with your alleged failure to properly protect and properly control shove movement at approximately 1048 hours on August 19, 2021, while working as crew members on the YSSB132119A. The date BNSF received first knowledge of this alleged violation is August 20, 2021.
>
> This investigation will determine possible violation of GCOR 1.47 Duties of Crew Members, GCOR 1.6 Conduct, GCOR 6.5 Shoving Movements, GCOR 6.28 Movement on Other than Main Track, GCOR 7.4 Precautions for Coupling or Moving Cars or Engines and ABTHR 103.0 Train Handling.
>
> CALEB SAMUEL BUTLER (0044990) is ineligible for Alternative Handling because the charge involves alleged violation of rules associated with BNSF's Critical Work Practices.
>
> JEREMY JOSEPH PENNINGTON (0382812) is ineligible for Alternative Handling because the charge involves alleged violation of rules associated with BNSF's Critical Work Practices.
>
> JONATAN CARDOZA (0287888) is ineligible for Alternative Handling because the charge involves alleged violation of rules associated with BNSF's Critical Work Practices.
>
> Contact Dentin Chapman at 337-572-2501 or Dentin.Chapman@BNSF.com with any questions regarding this investigation, postponement or waiver.
>
> Arrange for representation and any witnesses you may desire at the investigation as provided under applicable provisions of the labor agreement.
>
> Sincerely,
>
> *[signature]*

19.     On October 14, 2021, BNSF held the "formal investigation." BNSF's Ty Christian was in charge of the formal investigation, which was audiotaped. During the course of the day long investigation, BNSF's train crew confirmed that they had reported to BNSF that the brakes on the Locomotive Consist were not functioning properly **prior** to the hard coupling, but they were instructed by BNSF management to use the Locomotive Consist regardless. Butler verified during the formal investigation that the brakes were not functioning properly, that the locomotive seat broke, and that as a result, he was injured. Butler also echoed the sentiment of the train crew—that BNSF was retaliating against all of them because Butler was injured and reported it. BNSF's Ty Christian asked Butler why he believed that. Butler told him about the threats Trainmaster Madden had made. Ty Christian asked if there was anyone to corroborate that Trainmaster

6

Madden had made the threats. Butler told Ty Christian that Conductor Pennington could. Conductor Pennington confirmed to Ty Christian that Trainmaster Madden had made the threats and also identified another BNSF employee who could corroborate the same.

20. BNSF's Ty Christian took a break during the investigation to make a phone call to an unknown person. After making the mysterious phone call, BNSF's Ty Christian terminated the investigation. BNSF later dismissed the charges against the train crew. However, the message was sent, the damage was done, and Butler and Pennington experienced significant mental anguish, worry, fear, and anxiety sincerely believing that BNSF would fire them.

21. Notwithstanding the fact that BNSF was aware the Butler and Pennington had reported that BNSF had violated the FRSA and that Butler had reported a work-related personal injury, BNSF failed to preserve the audio transcript and exhibits of the day long investigation.

## V. FRSA VIOLATIONS

22. Butler and Pennington would show that at all relevant times, each was an employee pursuant to 49 U.S.C. §20109.

23. Butler and Pennington engaged in statutorily protected activity in good faith. Butler and Pennington reported to BNSF that the Locomotive Consist was defective in that it had defective brakes, a defective door handle and a defective seat. Butler also reported to BNSF in writing that he sustained a work-related personal injury.

24. BNSF had actual knowledge that Butler and Pennington engaged in the protected activity of reporting safety hazards. The safety hazards that Butler and Pennington reported constitute violations of federal locomotive safety regulations. Butler put into writing on August 19, 2021 that the locomotive seat broke at the time of the hard coupling, which violates federal locomotive safety regulations 49 C.F.R. §229.119(a) and 49 C.F.R. §229.45. Butler and Pennington also verbally notified BNSF that the Locomotive

7

Consist brakes were not working correctly, which violates 49 C.F.R. §229.45 and 49 C.F.R. §229.46, and that the door handle was broken, which violates 49 C.F.R. §229.45 and 49 C.F.R. §229.119(a).

25. In addition to completing a personal injury report and turning it in to BNSF, Butler also communicated his personal injury to BNSF's medical department, which approved his on-duty medical leave of absence. Thus, BNSF also had actual knowledge that Butler engaged in the protected activity of reporting a work-related personal injury.

26. BNSF's Trainmaster Jeff Madden threatened to terminate Butler and Pennington for engaging in protected activity in good faith. BNSF's Jeff Madden also told Pennington that Butler was lying about the defective Locomotive Consist, which under BNSF's policy is a stand-alone dismissible offense. BNSF's Trainmaster Jeff Madden threatened Butler and Pennington for the express purpose of discouraging Butler, Pennington and other BNSF employees from engaging in protected activity, including reporting in good faith hazardous conditions and an on-duty injury. BNSF made the aforementioned threats at least twice, followed up on the threats by sending a Notice of Investigation Letter to Butler and Pennington on September 15, 2021, and then conducted a formal investigation on October 14, 2021. Despite the fact that BNSF did not ultimately follow through on its scurrilous threats to fire Butler and Pennington, Butler and Pennington had to endure over a month of believing that they would be fired and would not have any income or health insurance for their families. BNSF's conduct constitutes retaliation:




27.     Plaintiffs' protected activity was a contributing factor in BNSF's threats to fire them. The undisputed facts in this case are that that Butler and Pennington reported, in good faith, safety hazards. Butler also reported a work-related personal injury. For the purpose of preventing Butler, Pennington and others from reporting safety defects and a personal injury, BNSF publicly threatened to fire Butler and Pennington and took active steps to do so. BNSF's actions were not on accident—they were on purpose. BNSF specifically intended to send a clear and unequivocal message to its employees—work with the equipment that you are instructed to use, regardless of whether or not it is safe, and if you get injured because of it, don't

9

report it. And, taking a page directly out of the Mob's playbook, if you do report safety defects, there will not only be consequences for you, there will also be consequences for your family and your co-workers.

28.     In summary, Butler and Pennington can establish as a matter of both fact and law that they (1) engaged in statutorily-protected activity; (2) BNSF knew they engaged in a protected activity; (3) they suffered an unfavorable personnel action; and (4) their protected activity was a contributing factor in the unfavorable personnel action. On such basis, BNSF Railway Company is liable to Butler and Pennington for violating the FRSA.

## VI. FRSA DAMAGES

29.     Butler demands a Judgment under the FRSA for all relief necessary to make him whole, including, but not limited to, (a) complete removal of any reference whatsoever that Butler violated or was charged with violating any of BNSF's safety or operating rules as set forth in the September 15, 2021 Notice of Investigation Letter, (b) monetary damages for the significant mental anguish and anxiety suffered and experienced by Butler in worrying, agonizing, losing sleep, fretting, and obsessing over reporting, in good faith, hazardous safety conditions and a work-related personal injury while subjecting himself and his co-workers to getting fired, being publicly called a liar, and being unable to provide income and health insurance for his family all while trying to recover from a painful back injury, (c) the statutory maximum of punitive damages, (d) attorney's fees, (e) litigation costs, (f) expert fees, (g) discipline and/or training provided to BNSF's managers on the FRSA, including Jeff Madden, (h) a written letter publicly posted in BNSF's yard office that Butler was not dishonest or lying about the defects in the Locomotive Consist or his personal injury report, (i) prejudgment interest, (j) post-judgment interest, and (k) any additional relief necessary to make Butler whole.

30.     Pennington demands a Judgment under the FRSA for all relief necessary to make him whole, including, but not limited to, (a) complete removal of any reference whatsoever that Pennington violated or

was charged with violating any of BNSF's safety or operating rules as set forth in the September 15, 2021 Notice of Investigation Letter, (b) monetary damages for the significant mental anguish and anxiety suffered and experienced by Pennington in worrying, agonizing, losing sleep, fretting, and obsessing over reporting, in good faith, hazardous safety conditions while subjecting himself and his co-workers to getting fired, (c) the statutory maximum of punitive damages, (d) attorney's fees, (e) litigation costs, (f) expert fees, (g) discipline and/or training provided to BNSF's managers on the FRSA, including Jeff Madden, (h) a written letter publicly posted in BNSF's yard office that Pennington was not dishonest or lying about the defects in the Locomotive Consist, (i) prejudgment interest, (j) post-judgment interest, (k) loss of earnings or earnings capacity and (l) any additional relief necessary to make Pennington whole.

31. As a result of Defendant's FRSA violations, Plaintiffs demands a Judgment under the FRSA for all relief necessary to make them whole, including monetary damages for the damages set forth in paragraphs 31 and 32.

## VII. FEDERAL EMPLOYERS' LIABLITY ACT

32. Plaintiff Butler incorporates Paragraphs 12-21 herein as if set forth word for word.

33. Plaintiff Butler's rights and remedies against Defendant arise under the Federal Employers' Liability Act (FELA), 45 U.S.C. §51 et seq., and the jurisdiction of this Court is invoked under provisions of said Act.

34. At all times mentioned in this Complaint, Defendant was a common carrier by railroad engaged in interstate commerce through and between the several states.

35. On August 19, 2021, Plaintiff Butler was an employee of Defendant.

36. At all times material hereto, Plaintiff Butler, as employee, and Defendant, as Plaintiff Butler's employer, were mutually engaged in interstate commerce.

37. On August 19, 2021, Plaintiff Butler was on duty and working as a locomotive engineer at Silsbee Yard in the course and scope of his employment with Defendant BNSF Railway Company.

38. On August 19, 2021, and while in the course and scope of his duties as a locomotive engineer, Plaintiff Butler was instructed to operate the Locomotive Consist.

39. Although multiple employees, including Plaintiff Butler–reported to Defendant BNSF Railway Company that the brakes on the Locomotive Consist were defective and worn out (and Defendant had actual and construction notice that the brake pads needed to be replaced)–BNSF instructed Plaintiff Butler to use the Locomotive Consist.

40. Plaintiff Butler suffered injuries to his back when, while coupling railcars using the Locomotive Consist, the train made a hard coupling into the railcars and the locomotive chair occupied by Plaintiff Butler unexpectedly broke.

41. It was the continuing duty of Defendant BNSF Railway Company, as employer, at that time and place, to furnish Plaintiff Butler with a reasonably safe place to work

42. In violation of its duty, Defendant BNSF Railway Company, through its agents, servants, or employees, negligently failed to provide Plaintiff Butler with a reasonably safe place to work by committing one or more of the following negligent acts or omissions:

    a. Failing to properly maintain, service and repair its equipment, including the locomotives brakes and seat.

    b. Not providing enough maintenance personnel to properly maintain Defendant's locomotives.

    c. Negligently instructing BNSF's train crew to use the locomotive consist despite knowledge the brakes and/or seat were defective.

    d. Failing to follow federal law.

  e. Failing to follow Defendant's safety and operating rules.

  f. Failing to warn Plaintiff of the dangerous and unsafe locomotive.

  g. Failing to perform safe and adequate inspection, testing, repair or maintenance of its locomotive.

43. Defendant's failure to provide Plaintiff Butler with a reasonably safe place to work by one or more of the above acts or omissions caused, in whole or in part, Plaintiff Butler's injuries on August 19, 2021.

## VIII. STRICT LIABILITY–
## VIOLATION OF FEDERAL LOCOMOTIVE SAFETY STATUTE 49 U.S.C. §20701

44. At the time of his injury, Plaintiff was working on a locomotive in use and in motion on Defendant's line. The locomotive in question was not in proper condition and safe to operate without unnecessary danger of personal injury. This condition constituted a violation of Federal Safety Statute 49 U.S.C. §20701 and the regulations promulgated pursuant to 49 U.S.C. §20701. Defendant's violation of said federal statute was a cause, in whole or in part, of Plaintiff's injuries and damages.

## IX. STRICT LIABILITY–
## VIOLATION OF FEDERAL RAILROAD ADMINISTRATION REGULATION
## 49 C.F.R. §§ 229.45, 229.7 and 229.9

45. Federal law requires that all systems and components on a locomotive be "free of conditions that endanger the safety of the crew, locomotive or train." The locomotive at issue was in violation of 49 C.F.R. §229.45. Defendant's violation of said federal statute was a cause, in whole or in part, of Plaintiff's injuries and damages.

## X. STRICT LIABILITY–
## VIOLATION OF FEDERAL RAILROAD ADMINISTRATION REGULATION
## 49 C.F.R. §229.119

46. Federal law requires that "cab seats shall be securely mounted and braced." 49 C.F.R. §229.119(a). The condition of Defendant's locomotive on which Plaintiff was working violated 49 C.F.R.

§229.119. Defendant's violation of said federal law was a cause, in whole or in part, of Plaintiff's injuries and damages.

## X. STRICT LIABILITY–
## VIOLATION OF FEDERAL RAILROAD ADMINISTRATION REGULATION
## 49 C.F.R. §§ 229.46 and 232.5

47. Federal law requires that locomotive brakes "operate as intended." 49 C.F.R. §229.46 and §232.5. The locomotive at issue was in violation of 49 C.F.R. §229.46 and §232.5. Defendant's violation of said federal statute was a cause, in whole or in part, of Plaintiff's injuries and damages.

48. As a result of Defendant's negligence and statutory violations, Plaintiff Butler suffered serious injuries and permanent impairment to his body. These injuries are permanent in nature. In all reasonable probability, Plaintiff Butler will suffer for a long time into the future, if not for the balance of his natural life. These injuries have had a serious effect on Plaintiff Butler's health and well-being. Because of the nature and consequences of his injuries, Plaintiff Butler has suffered great physical pain, mental anguish, physical impairment, disfigurement and, in all reasonable probability, will continue to suffer in this manner for a long time into the future, if not for the balance of his natural life. At the time of the incident complained of, Plaintiff Butler was in sound health and gainfully employed as a railroad worker. Plaintiff Butler has suffered lost wages and benefits in the past and, within reasonable probability, will continue to suffer a loss of wages, benefits, loss of household services and earning capacity in the future.

49. As a further result thereof, Plaintiff Butler has incurred expenses for medical care and attention, such as physicians' fees, medical supplies, appliances, medicine, hospitalization and nursing service. These expenses were incurred for necessary care and treatment of the injuries resulting from the incident complained of above. The charges for said expenses were reasonable and they were the customary charges made for such services in the area in which they were rendered. As a further result of the injuries sustained by

Plaintiff Butler, he will, within reasonable medical probability, incur future expenses for his medical care and attention.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be summoned to appear and answer, and that upon final trial Plaintiffs have:

    a. Judgment against Defendant.

    b. Pre-judgment and post judgment interest.

    c. Costs of litigation, including expert fees and litigation costs.

    d. The maximum amount of punitive damages authorized by law.

    e. Attorney's fees; and

    f. Such other and further relief at law or in equity to which Plaintiffs are justly entitled.

Respectfully submitted,

*/s/ Clint McGuire*

MARTINEZ & MCGUIRE PLLC
Clint E. McGuire
State Bar No. 24013139
Federal ID No. 25560
clint@mmtriallawyers.com
17227 Mercury Drive, Suite B
Houston, Texas 77058
Telephone:   (281) 286-9100
Facsimile:   (281) 286-9105

GROVES POWERS, LLC
Steven L. Groves, #40837
sgroves@grovespowers.com
One U.S. Bank Plaza
505 N. 7th St., Ste. 2010
St. Louis, MO 63101
Telephone:   (314) 696-2300
Facsimile:   (314) 696-2304

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of SECOND AMENDED COMPLAINT has been served in accordance with the Federal Rules of Civil Procedure on June 22, 2023, addressed as follows:

Susan J. Travis
sjt@robbinstravis.com
Lincoln Floyd
laf@robbinstravis.com
Robbins Travis PLLC
2485 E. Southlake Blvd., Suite 160
Southlake, Texas 76092

_____
Clint E. McGuire