# MTC Exhibit "F"

Videotaped Deposition of Dentin Chapman

```
                                                                1
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
 2                        BEAUMONT DIVISION

 3    CALEB BUTLER and JEREMY    )
      PENNINGTON,                )
 4        Plaintiffs,            )
                                 )
 5    VS.                        ) Case No. 1:22-CV-00367
                                 )
 6    BNSF RAILWAY COMPANY,      )
          Defendant.             )
 7

 8

 9    *****************************************************
                   ORAL AND VIDEOTAPED DEPOSITION OF
10
                            DENTIN CHAPMAN
11
                            JUNE 28, 2023
12
                          (REPORTED REMOTELY)
13    *****************************************************

14        ORAL AND VIDEOTAPED DEPOSITION OF DENTIN CHAPMAN,

15    produced as a witness at the instance of the Plaintiff,

16    and duly sworn, was taken in the above-styled and

17    numbered cause on June 28, 2023, from 10:02 a.m. to

18    10:20 a.m., before Donna Wright, CSR in and for the

19    State of Texas, reported by machine shorthand and

20    remotely via Zoom, pursuant to the Federal Rules of

21    Civil Procedure, the 22nd Emergency Order Regarding the

22    COVID-19 State of Disaster, and any stipulations or

23    agreements stated on the record or attached hereto.

24

25
```

Infinity Reporting Group, LLC
Phone: 832-930-4484  Fax: 832-930-4485

Videotaped Deposition of Dentin Chapman

**Page 10**

1  just described, occurred on August 19th, right?
2  A.  That's -- that's correct.
3  Q.  All right. And so on the 19th, you had
4  instructed Mr. Nesteby to remove those locomotives from
5  service?
6  A.  Yes, following -- yes, when he had called me I
7  told him to -- to do that until mechanical had cleared
8  the locomotives.
9  Q.  When was your next involvement with -- with
10 this hard coupling event and Caleb Butler's injury?
11 A.  So I asked Mr. Nesteby to please write an
12 e-mail to me so obviously we had a documentation of the
13 conversation he and Mr. Butler had, and to please
14 include the statement because I was obviously not
15 physically there with Mr. Nesteby, so to please send
16 that to me so I could see the statement.
17     The next involvement would have just been
18 through conversations and e-mail chains in the
19 following days as mechanical would have responded and
20 let me know what they had found, that they were
21 releasing the locomotive.
22     And then obviously continuing to look
23 into a follow-up conversation with Mr. Nesteby, had he
24 heard from Mr. Butler. I think it was on a Thursday,
25 and so we were going into a weekend and I know

**Page 11**

1  Mr. Butler was on his off days. So, you know, how was
2  Mr. Butler feeling, et cetera. And it would have just
3  been lead-up -- follow-up conversations from that point
4  on as everything continued to progress.
5  Q.  So you had a discussion with Mr. Nesteby and
6  asked him to e-mail you a copy of the statement that
7  Mr. Nesteby had completed that we looked at, Exhibit
8  No. 2?
9  A.  I think I had told him -- yeah, I told him via
10 phone to send me an e-mail and to include the statement
11 as part of that e-mail, yes.
12 Q.  Did -- did Mr. Nesteby do that?
13 A.  Yes, he did.
14 Q.  All right. Did you do anything else on -- and
15 did he do that on the 19th?
16 A.  I don't recall the exact date of his e-mail,
17 so I believe he did, yes, on that -- on that date an
18 initial kind of instant response.
19 Q.  Did you do anything else on August 19th other
20 than having this discussion with Mr. Nesteby?
21 A.  No. Giving him the instruction to take the
22 locomotive out of service, that would have been --
23 would have been it at that point.
24 Q.  Where could we look to see -- what would
25 Mr. Nesteby need to do at that point in time to remove

**Page 12**

1  those locomotives from service?
2  A.  Yeah, so he would -- he would obviously make
3  sure they were physically in the roundhouse. They
4  would want to make sure that it is obviously on their
5  turnover, mechanical has it. Those locomotives could
6  not be used until inspected. That would need to be a
7  formal briefing as well that he would have with -- with
8  his -- during his turnover and that the team was aware
9  those locomotives don't go back into service until
10 mechanical clears them.
11 Q.  Would Mr. Nesteby need to complete a document
12 to remove those locomotives from service or would he
13 just need to have a conversation?
14 A.  Just need to have a conversation. I had
15 included -- Mr. McGuire, I had included -- I don't
16 recall the date of the inclusion, but I included the
17 mechanical supervisor that oversaw Silsbee Yard and
18 Lafayette Yard in that communication to make sure he
19 was also aware and Mr. Nesteby was aware that those
20 locomotives were not to come back in service.
21 Q.  When you say you included, what do you mean by
22 that?
23 A.  I believe I included him in the e-mail -- I
24 believe I included him in the e-mail response,
25 Mr. Trailer, in the e-mail response to make sure he was

**Page 13**

1  aware of it.
2     MR. McGUIRE:  Susan, do you know where
3  those e-mails are at?
4     MS. TRAVIS:  I know where some of them
5  are. And, counsel, they include -- and I was going to
6  have a conversation with you about this and I'm very
7  sorry.
8     They include the claims department in
9  connection with investigating Mr. Butler's injury. And
10 some of them -- here's the conversation I was going to
11 have with you. Some of them, while they include the
12 claims department, are factual in nature and I'm happy
13 to produce those because I feel like if it's factual,
14 that could -- that's discoverable.
15    But I don't want that to be considered by
16 you a waiver of all communications with the claims
17 department because there is an investigative privilege.
18 And so I didn't know where you would stand on that.
19    MR. McGUIRE:  Well, obviously I'm going
20 to need those documents to be able to question him
21 about them because I literally just got the e-mails two
22 days ago where -- from September 28th from a
23 decisionmaker in the case discussing the -- his
24 investigation of what happened. And I just got those.
25    And to learn that there's more e-mails, I

Infinity Reporting Group, LLC
Phone: 832-930-4484  Fax: 832-930-4485

Videotaped Deposition of Dentin Chapman

**Page 14**

1  mean, I need these to be able to question all of the
2  witnesses. So do you have -- I mean, and obviously you
3  guys have redacted portions that you thought that I
4  didn't need to see.
5          So I guess what I want to be able to do
6  is go through those documents so that I can read those
7  to be able to -- to question him about those.
8          MS. TRAVIS: Sure, I understand. I mean,
9  we have been, you know, taking a lot of depositions and
10 it's -- it's been a lot.
11         I'll handle this however you want. If
12 you want to stop taking his deposition right now today
13 and reschedule it, we can do that. If you want me to
14 find the Will Trailer one right now, we can take a
15 ten-minute break and I'll redact the stuff.
16         I did not -- I don't want to produce
17 something that I think is arguably protected by the
18 investigative privilege. But there -- that's a --
19 that's a broad -- that's a gray area.
20         There's some of them that are -- it's
21 just factual and I have no objection to producing that.
22 But the claims people are copied on it and I don't want
23 you to consider that a waiver of all other e-mails.
24         And, you know, other e-mails that I feel
25 like are protected by the privilege, I'm doing a

**Page 15**

1  privilege log on them. We can take it up with the
2  court on those.
3          But on the ones that I'm not fighting
4  about, except for the fact that they are copied to
5  claims people, I'm happy to produce those if you do not
6  consider that to be a waiver of the privilege.
7          MR. McGUIRE: Well, I guess the first
8  thing is -- and I'm having difficulty understanding why
9  these weren't produced a year or so ago.
10         MS. TRAVIS: I have been working through
11 and getting -- you know, the -- his -- I have been
12 trying, Clint. I mean, there's a lot -- we have
13 produced a lot of documents in this case. I have been
14 trying to keep up with a whole lot of production and
15 get you Chad Nesteby before Chad Nesteby's deposition
16 and get you Ty Christian before Ty Christian's
17 deposition. And I have been trying to -- I have been
18 prioritizing.
19         So I'm sorry. It's been a busy caseload.
20 You know, three of the cases are with you and so I'm
21 doing the best I can. Like I said, if you want to not
22 take his deposition today because you want me to
23 produce these e-mails before -- I'm not trying to trick
24 you. If you want more time, then we will get you more
25 time. I've been doing the best I can.

**Page 16**

1          MR. McGUIRE: Yeah. I mean, all that I'm
2  getting it at is if -- I just want all of the
3  documents. For example, I did not have the document to
4  be able to question Janssen Thompson about some of
5  these things that we know now that he knew and the same
6  with Chad Nesteby.
7          And it just -- you know, from my
8  perspective, like the document that was just produced
9  for Mr. -- for Mr. Chapman here, that document -- this
10 is a decisionmaker. Of all of the documents we would
11 think that we would get in this case, it would be
12 e-mails from him discussing the hard coupling.
13         There's no -- you know, no claim of any
14 type of privilege with regard to that document and I
15 just got it. And that -- I guess that's the issue that
16 I'm having is it just seems like it's just drip, drip,
17 dripping. And I want to make sure I have everything so
18 that I don't have to come back and take these things
19 again. I mean, I'm happy --
20         MS. TRAVIS: I agree, Clint. You tell me
21 what you want to do. I mean, I agree. And, like I
22 said, I'm sorry. I'm doing the best I can. I'm trying
23 to, you know, hamster on the wheel and keep up the best
24 I can.
25         MR. McGUIRE: Okay.

**Page 17**

1          MS. TRAVIS: If you don't want to take
2  his deposition today, that's completely fine. I'm not
3  fighting you on that at all. You tell me what you want
4  to do.
5          MR. McGUIRE: Yeah, I think what I would
6  like to do is get the -- all of -- so that we don't
7  have to -- I don't want to have to bring Mr. Chapman
8  and question him again and then get into a question of
9  I already asked this and then come back and ask this.
10         I think it would be fairest for everyone
11 if we get our hands around everything that is there so
12 that I can -- I can question him about those things.
13         So I think what -- that I would like to
14 pause this deposition and then just reschedule it once
15 we get those worked out.
16         MS. TRAVIS: I have no problem with that.
17 It may, though, Clint, require -- I mean, I'll do a
18 privilege log and it may require going to the court on
19 some of this.
20         And I hear what you're saying about he's
21 the decisionmaker in the FRSA case, but you've added
22 your FELA case to this. And so there's -- there's a
23 FELA personal injury investigation of that component.
24 So it's -- it's blurrier than it would be if it was
25 just an FRSA case.

Videotaped Deposition of Dentin Chapman

```
                                    18
1         Feel free -- you're free to disagree with
2    me, but that's where I'm coming from.
3         MR. McGUIRE: Well, it won't accomplish
4    anything. And that's not -- we can do that in
5    pleadings. And so I appreciate --
6         MS. TRAVIS: Yeah.
7         MR. McGUIRE: I think the best thing for
8    all of us at this point is to hit pause, reschedule
9    this. You were kind enough to reschedule it to deal
10   with an -- with an issue that I had. We will get this
11   back on the books once we get those issues worked out.
12        I know that we have a couple of other
13   issues that we can discuss that you and I have been
14   discussing, and maybe we can get all of those wrapped
15   up at once and then we can come back and get this done.
16        MS. TRAVIS: Yeah. And Mr. Chapman seems
17   to be very decently available, unlike another witness
18   I'm trying to pin down, and have been trying to pin
19   down for months.
20        So I feel like we will be able to get
21   Mr. Chapman back on the calendar, you know, relatively
22   easily once we work out our document issue.
23        MR. McGUIRE: Okay. Well, Mr. Chapman,
24   I'm sorry. We will -- thank you for reserving your
25   time today. We will get this taken care of and we will
```

```
                                    19
1    do this on another mutually agreeable time.
2         THE WITNESS: Sounds good. Thank you,
3    Mr. McGuire.
4         MS. TRAVIS: Okay. I'll talk to you in a
5    bit, Mr. Chapman.
6         THE WITNESS: Yes.
7         THE VIDEOGRAPHER: Sorry, Ms. Travis, I
8    just need to ask, do you want a copy of the transcript?
9         MS. TRAVIS: From the court reporter,
10   yeah. Not the video. No offense.
11        THE VIDEOGRAPHER: Oh, no problem. Thank
12   you.
13        We are going off the record. The time
14   is 10:20.
15        (Proceedings concluded at 10:20 a.m.)
```

```
                                    20
1                  CHANGES AND SIGNATURE
2    WITNESS NAME: DENTIN CHAPMAN
3    DATE OF DEPOSITION: JUNE 28, 2023
4    PAGE     LINE     CHANGE          REASON
```

```
                                    21
1         I, DENTIN CHAPMAN, have read the foregoing
2    deposition and hereby affix my signature that same is
3    true and correct, except as noted above.

                          _____
                              DENTIN CHAPMAN

6    THE STATE OF _____ )
7    COUNTY OF _____ )
8         Before me, _____, on this day personally
9    appeared DENTIN CHAPMAN, known to me (or proved to
10   me under oath or through _____) (description
11   of identity card or other document) to be the
12   person whose name is subscribed to the foregoing
13   instrument and acknowledged to me that he executed
14   the same for the purposes and consideration therein
15   expressed.
17        Given under my hand and seal of office, this
18   _____ day of _____, _____.

                          _____
                          NOTARY PUBLIC IN AND FOR
                          THE STATE OF _____

23   My commission expires: _____
24   ____ No Changes Made  ____ Amendment Sheet(s) Attached
```

Infinity Reporting Group, LLC
Phone: 832-930-4484  Fax: 832-930-4485